[Crim. No. 35300. Second Dist., Div. Four. May 20, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT GONZALES MARTINEZ, Defendant and Respondent.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, Howard J. Schwab and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Appellant.

Richard E. Erwin, Public Defender, and H. Bruce Kinnison, Deputy Public Defender, for Defendant and Respondent.

---

OPINION

WOODS, J.—The People have appealed from an order granting a new trial after respondent, Robert Gonzales Martinez, was convicted of assault with intent to commit murder in violation of Penal Code section 217; the jury found that he intentionally inflicted great bodily injury in violation of Penal Code section 12022.7; and was armed with a deadly or dangerous weapon in the commission of a felony in violation of Penal Code section 12022, subdivision (a).

Appellant contends that the trial court erred as a matter of law in granting respondent's motion for a new trial. The sole basis for granting the motion for new trial was the trial court's belief that it had erred in instructing the jury in the language of CALJIC Nos. 8.11 and 8.31, in that those instructions relieved the jury of the necessity of making a finding that the respondent specifically intended to kill the victim of the assault. We reject the appellant's contention and affirm the granting of the motion for a new trial.

Angel Alamillo, Jr., the victim herein, had attended a football game together with his friends, Mr. Mosqueda and Mr. Ortiz. After the football game, there was an exchange of words between the respondent and Mr. Mosqueda. Mr. Alamillo stood and watched respondent and Mr. Mosqueda exchange words, but no blows were struck. About one-half hour later, Mr. Alamillo and respondent were standing a few feet from each other when Mr. Alamillo noted that respondent was standing in an aggressive manner and glaring at him. He told respondent to come over to where he was, that he wanted to talk to him; respondent replied, "No, you come over here," at which point respondent and Mr. Alamillo walked toward each other. Mr. Alamillo reached out and grabbed the respondent by the shirt, but there was no attempt to strike him. Respondent then stabbed Mr. Alamillo in his right arm and in his stomach on the left side. As a result of the stab wound to the arm, Mr. Alamillo has no extension in the finger of his right hand and some loss of sensation.

Mr. Alamillo was bleeding from his injuries when the respondent backed off and turned toward him, his knife raised, saying, "Stay away from me or I'll kill you."

The knife respondent used to stab Mr. Alamillo appeared to be a kitchen knife with a blade about four or five inches long and about an inch in width.

The respondent was unknown to Mr. Alamillo before this incident.

Mr. Mosqueda testified that, after the stabbing, he saw the respondent with a knife in his hand flashing it around. The respondent was shouting to the people who had surrounded him, "Everybody get back or I'll kill you." Mr. Mosqueda told the respondent to put the knife away and fight like a man hand to hand, to which the respondent smiled and replied, "No, I just fight with knives."

The respondent Robert Martinez testified that Angel Alamillo grabbed him by his chest area and pulled him, tearing off a chain which he wore around his neck. He testified that he became scared and wanted to get away from him, that he pulled out his knife and stabbed Mr. Alamillo in self-defense. Respondent further testified that the knife that he was carrying in his jacket is one which he uses in his work as a bricklayer, to cut open sacks of cement.

Based on this evidence the trial court, over defense objection, instructed the jury that an assault with intent to commit murder may be prosecuted upon an implied malice theory. The instructions objected to are set forth as given, CALJIC No. 8.11[1] and CALJIC No. 8.31.[2]

---

[1]CALJIC No. 8.11 as given provides as follows: "'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intent unlawfully to kill a human being. [¶] Malice is implied when an act involves a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life by which is meant an awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness. [¶] The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed. [¶] 'Aforethought' does not imply deliberation for the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

[2]CALJIC No. 8.31 as given provides as follows: "When the killing is the direct result of such an act, it is not necessary to establish that the defendant intended that his act would result in the death of a human being."

Several California cases and many criminal scholars[3] have acknowledged a distinction between the intent required for the completed crime of murder and that required for a mere attempt. ■ In *People* v. *Mize* (1889) 80 Cal. 41, 43-44 [22 P. 80], the Supreme Court explained: "...'To constitute murder, the guilty person need not intend to take life; but to constitute an attempt to murder, he must so intend.' [Citation.]... It is doubtless true that, as a general rule, a man is presumed to have intended that which he has done, or that which is the immediate and natural consequence of his act, but where an act becomes criminal only when it has been performed with a particular intent, that intent must be alleged and proved. It is for the jury, under all the circumstances of the case, to say whether the intent required by the statute to constitute the offense existed in the mind of the defendant." To the same effect see *People* v. *Weston* (1917) 32 Cal. App. 571, 578 [163 P. 691].

■ It is the contention of the People, the appellant herein, that a defendant may be convicted of assault with intent to commit murder on the implied malice theory used in connection with consummated second degree murder. In support of this contention, appellant relies on *People* v. *Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859], wherein it is stated: "The crime of assault with intent to commit murder requires proof of a specific intent to murder, but without regard to any distinction between first and second degree murder. [Citations.] Both first and second degree murder require existence of the state of mind known as malice; aside from felony murder, a specific intent to kill is a necessary ingredient of first degree murder but not of second degree murder. [Citations.] Hence, it is incorrect to say that assault with intent to commit murder requires proof of specific intent to kill; more accurately, one should speak of specific intent to commit murder. [Citations.]"

The court in *Heffington* held that the evidence of an attempted killing without malice in a trial for violating Penal Code section 217 required a *sua sponte* instruction on attempted voluntary manslaughter

---

[3]Perkins on Criminal Law (1969) chapter 6, section 3, page 573, explained: "The word 'attempt' means to try; it implies an effort to bring about a desired result. Hence, an attempt to commit any crime requires a specific intent to commit that particular offense....While a person may be guilty of murder though there was no actual intent to kill, he cannot be guilty of an attempt to commit murder unless he has a specific intent to kill." (See also Lafave & Scott, Criminal Law, ch. 6, pp. 428, 429; Annot., What Constitutes Attempted Murder, 54 A.L.R.3d 612, 622-623.)

as a lesser-included offense. The court explained that in those cases where the defendant lacked the capacity to harbor malice *and therefore could not be convicted of assault with intent to commit murder*, this may under appropriate circumstances be the very basis for having to rely on a conviction of attempted voluntary manslaughter. There is nothing in this analysis which would support the conclusion drawn by the respondent that express malice is no longer required as an element of assault with intent to commit murder.

The CALJIC committee has apparently misinterpreted the *Heffington* language, since in its "use note" to CALJIC No. 9.01 it erroneously advises the trial court to instruct on both express and implied malice.[4]

The *Heffington* opinion does not expressly consider the implied malice portion of CALJIC No. 8.11. Its attention was directed only to the italicized portion of the instruction pertaining to second degree felony murder which it determined was erroneous based upon "parity of reasoning with *People v. Ireland*, 70 Cal.2d 522, 538-539 . . . ." (*People v. Heffington, supra*, 32 Cal.App.3d at p. 12.)

The appellant also cites language in *People v. Hoxie* (1967) 252 Cal.App.2d 901, 904 [62 Cal.Rptr. 37], and *People v. Butts* (1965) 236 Cal.App.2d 817 [46 Cal.Rptr. 362], for their findings that the intended murder leading to guilt under Penal Code section 217 need only be murder in the second degree. However, as is pointed out by both appellant and respondent, *People v. Butts, supra*, and *People v. Hoxie, supra*, also stand for the proposition that it is necessary that the People prove beyond a reasonable doubt that the defendant harbored the specific intent to kill. As was carefully reviewed in *People v. Hoxie*, the Supreme Court has drawn a line between homicide which follows deliberation and premeditation, first degree murder, and a killing preceded merely by a specific intent to kill. Specific intent does not distinguish murder in the first degree from murder in the second degree, other than felony murder or murder by poison, lying in wait or torture. Deliberation, the weighing of consideration, is determinative of degree. Therefore, logic does not dictate that because the defendant need only

---

[4]The "use note" provides: "Use Instruction 9.00 (1979 Revision) for definition of assault, Instruction 8.10 (1979 Revision) for definition of murder and Instruction 8.11 (1979 Revision) for definition of malice aforethought omitting the bracketed clause in the third paragraph reading: 'When the killing is a direct causal result of the perpetration or the attempt to perpetrate a felony inherently dangerous to human life.' *People v. Heffington*, 32 Cal.App.3d 1 . . . ."

be guilty of murder in the second degree under Penal Code section 217, it would follow that the intent necessary under this section could be implied from the facts of the case.

The discussion of intent to cause death in *People* v. *Velasquez* (1980) 26 Cal.3d 425 [162 Cal.Rptr. 306, 606 P.2d 341], as it relates to special circumstances in a death penalty case, represents no change from earlier cases which discuss the requisite intent for murder. Contrary to the contention of the appellant, the murder intent being analyzed in *People* v. *Velasquez, supra*, and *Estate of Kramme* (1978) 20 Cal.3d 567[5] [143 Cal.Rptr. 542, 573 P.2d 1369], cited therein, is the intent to do the act which results in the death and not the intent to kill which we find necessary in an assault with intent to commit murder.

In *People* v. *Miller* (1935) 2 Cal.2d 527, 532-533 [42 P.2d 308], defendant had been convicted of attempted murder. His challenge to jury instructions on implied malice was found meritorious. The Supreme Court explained: "...Furthermore, in such a case an instruction to the jury that guilty intent may be presumed from an unlawful act is prejudicially erroneous. The court instructed the jury: 'The law presumes a malicious and guilty intent from the deliberate commission of an unlawful act for the purpose of injuring another.' This instruction is not proper in a case involving the charge of attempt to commit murder where intent is an essential element to be alleged and proved as a fact, and may not rest upon a presumption. [Citations.] Likewise, because intent is an element which must be proved, an instruction is erroneous which tells the jury that 'if the actual transaction has commenced which would have ended in the crime of murder, if not interrupted, there is an attempt to commit the crime.' [Citation.] The distinction in this respect is stated in 2 Bishop's Criminal Law, section 741, and quoted in the last-cited case: 'The wrongdoer must specifically contemplate taking life, and though his act is such as, were it successful, would be murder, if in truth he does not mean to kill, he does not become guilty of an attempt to commit murder.' [Citation.]"

As pointed out by appellant in the instant case, the trial court instructed the jury that the crime of assault with intent to commit murder requires that the prosecution prove that a person was assaulted and that such assault was made with the specific intent to murder such person

---

[5]The Supreme Court defined the term "intentionally caused the death of a decedent" to mean, the actor must either desire the result or know to a substantial certainty that death will occur. (*Estate of Kramme, supra*, 20 Cal.3d at pp. 572-573.)

(CALJIC No. 9.01 (1979 rev.)). The crime of murder was then defined for the jury (CALJIC No. 8.10 (1979 rev.)). The court then instructed the jury on malice aforethought by giving CALJIC No. 8.11 (1979 rev.). The court defined second degree murder (CALJIC No. 8.31 (1974 rev. mod.). Appellant argues that with the crimes thus defined the jury had the necessary information relative to intent and could have found the specific intent to kill necessary for a conviction under Penal Code section 217.

We agree that the appropriate murder definitions were given; however, as previously noted, the jury was also instructed that they could find intent to kill, pursuant to CALJIC No. 8.31 by implication, where the defendant did an act with a high degree of probability that it would result in death; and that malice could be implied if the killing was the result of the perpetration of an inherently dangerous felony. The instructions were not merely inconsistent or confusing but would appear to inform the jury that although specific intent was an element of the crime, the intent could be implied from the facts of the case. As explained hereinabove, that is not the law.

As indicated by the trial court herein, on the granting of the motion for a new trial, the law as enunciated in *People* v. *Mize, supra*, 80 Cal. 41, has not been overruled. The prosecution must prove intent to kill beyond a reasonable doubt.

The conflicts in the testimony herein make it reasonably probable that a result more favorable to the defendant would have occurred had the jury been properly instructed.

The instructions containing the erroneous matter were prejudicial to the defendant's rights.

The order granting a new trial is affirmed.

Kingsley, Acting P. J., and Hogoboom, J.,* concurred.

A petition for a rehearing was denied June 5, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1980. Clark, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.