Filed 9/24/14  In re C.G. CA1/3
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.G., a Person Coming Under the Juvenile Court Law. | |
| PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.G., <br><br> Defendant and Appellant. | A140135 <br><br> (San Mateo County <br> Super. Ct. No. JV81137) |
| In re C.G., a Minor, <br><br> On Habeas Corpus. | A141593 |

This is an appeal from the jurisdictional and dispositional orders of the juvenile court in juvenile delinquency proceedings involving minor C.G.  Minor raises three legal issues on appeal, all of which are conceded by the People.  Having reviewed the record, we agree with the parties that the challenged orders must be reversed and the matter remanded to the juvenile court to correct certain errors made therein.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 5, 2013, a juvenile wardship petition was filed pursuant to Welfare and Institutions Code section 602, subdivision (a) (the petition) alleging that minor committed an attempted residential burglary and conspiracy to commit attempted residential

1

burglary.[1]  On September 10, 2013, a contested jurisdictional hearing was held at which the following evidence was presented.

On August 2, 2013, between approximately 8:00 and 8:45 a.m. in Menlo Park, minor and another youth were riding bicycles in the neighborhood near 14th and 18th Avenues.  Both boys were wearing hats.

Upon arriving at the residence at 860 14th Avenue, where a family with three children lived, the boys left their bicycles and approached the front door.  Neighbors observed one of the boys, later identified as minor, first knock on the door and ring the door bell, before "kind of lean[in] into the door as if he was trying to hear sound from inside the house."  The neighbor then saw minor peer into the window to the left of the front door, before gaining entry into the yard through a gate on the left side of the house.

A short time later, the 16-year-old girl who lived in the home heard a noise outside her bedroom window.  Upon peeking through her window, she observed a person wearing a colorful beanie hat, later identified as being worn by the other youth.  When police responded to the scene, the officer observed a corner of the screen to the window was bent and actually pulled away from the windowsill.  A neighbor later identified minor as one of the boys who had been seen entering or exiting the pathway to the side of the house.

The same morning, another resident of this neighborhood was awoken by someone knocking on her front door.  When she answered the door, she saw a boy wearing a baseball hat, later identified as minor, looking through the window next to the door.  Minor nervously asked her, "Is Christian there?"  The resident did not know any person named Christian, so closed the door before opening it again to ask for "Christian's" last name.  Before turning around and leaving on his bicycle, minor responded with a name sounding like "Aguilara."  The resident called the police.

_____

[1]     All subsequent statutory references are to the Welfare and Institutions Code unless otherwise noted.

2

A short while later, San Mateo Deputy Sheriff Michael Arguel responded to the reports of suspicious activity in the area between 14th Avenue and 18th Avenue. He quickly located two boys wearing hats and riding bicycles who matched the description of the suspects. One of these boys was minor. When approached by Deputy Arguel, the boys avoided eye contact and appeared nervous and excited. Deputy Arguel asked to speak with the boys, at which time minor volunteered that he was on probation in San Mateo County. Deputy Arguel subsequently recovered a black sock, a possible burglary tool, from the front yard of a nearby residence that matched a sock found on minor's friend.

Following the contested hearing, the juvenile court found the allegations against minor true. The juvenile court then continued minor as a ward, removed him from the custody of his parents, and committed him to the San Mateo County Juvenile Rehabilitation Facilities Camp Glenwood Program.

On October 30, 2013, minor filed a timely notice of appeal and, on April 21, 2014, a related petition for writ of habeas corpus contending that the judgment should be reversed because, among other things, he was denied effective assistance of counsel. (*In re C. G.,* case no. A141593.) This court thereafter consolidated minor's direct appeal with his petition for writ of habeas corpus to promote judicial efficiency.

## DISCUSSION

Minor contends, and the People concede, that the following errors occurred below, requiring reversal of the jurisdictional and dispositional orders and remand to the juvenile court for further proceedings. First, neither the prosecutor nor the juvenile court met their statutory duties under the Deferred Entry of Judgment (DEJ) Program, section 790 et seq. Second, the juvenile court erred in sustaining a finding that minor committed the crime of conspiracy to commit attempted burglary, a crime not cognizable under California law. And, third, the juvenile court erred by failing to discharge its mandatory duty to indicate the maximum term of minor's confinement in the dispositional order.

3

We agree with each of these contentions and, thus, consistent with the parties' joint request, reverse the challenged orders and remand this matter to the juvenile court for further proceedings consistent with this opinion.

## I.       Remand is Necessary for Compliance with the DEJ Program.

A juvenile court has discretion to grant a minor deferred entry of judgment (DEJ) for a felony offense if he or she is found "suitable" upon consideration of certain statutory factors.  (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 608.)  However, prior to this exercise of discretion, a determination must be made regarding whether the minor is in fact eligible for the DEJ program based upon an initial assessment undertaken by the prosecutor.  Specifically, the relevant statutory provision states:  "The prosecuting attorney shall review his or her file to determine whether or not paragraphs (1) to (6), inclusive, of subdivision (a) apply.  If the minor is found eligible for deferred entry of judgment, the prosecuting attorney shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney.  Upon a finding that the minor is also suitable for deferred entry of judgment and would benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment. Under this procedure, the court may set the hearing for deferred entry of judgment at the initial appearance under Section 657.  The court shall make findings on the record that a minor is appropriate for deferred entry of judgment pursuant to this article in any case where deferred entry of judgment is granted."  (§ 790, subd. (b).)  In this case, these statutory requirements were not met.

Specifically, at the time the wardship petition was filed, the prosecutor properly submitted the mandatory "Determination of Eligibility" form.  However, the prosecutor erroneously indicated minor was ineligible for DEJ, with the result that no

declaration of eligibility was made in court, and no information regarding minor's eligibility was made available to minor or his attorney.[2]

Nonetheless, the parties now agree minor does in fact meet all DEJ eligibility requirements under section 790.  In particular, consistent with the statutory scheme: (1) minor has not previously been declared to be a ward of the court for the commission of a felony offense; (2) the offense charged is not one of the offenses enumerated in section 707, subdivision (b); (3) minor has not previously been committed to the custody of the Division of Juvenile Facilities; (4) minor's juvenile record does not indicate that probation has ever been revoked without being completed; (5) minor is at least 14 years of age at the time of the hearing; and (6) minor is eligible for probation pursuant to Penal Code section 1203.06.[3] (§ 790, subd. (a)(1)-(6).)

Accordingly, in light of the prosecutor's and the juvenile court's failures to comply with the identified requirements of the DEJ program, we reverse the jurisdictional order, as well as the underlying findings, and the dispositional order,

---

[2]  "The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000.  The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment.  Entry of judgment is deferred.  After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges.  The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed.  (§§ 791, subd. (a)(3), 793, subd. (c).)"  (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558.)

[3]  The record reflects the prosecutor checked off most of the boxes on the Determination of Eligibility form indicating minor met the identified requirements for entry into DEJ.  However, the prosecutor left unchecked the boxes relating to whether minor had been on, and successfully completed, probation, before ultimately identifying him as ineligible for DEJ.  According to the People, this error may have been made because, although the record does not indicate minor's probation status had previously been revoked (§ 790, subd. (a)(4)), it does indicate minor had committed at least three probation violations.  (See *In re T.P.* (2009) 178 Cal.App.4th 1, 4 [a minor who commits a probation violation but is not subject to probation revocation remains eligible for DEJ; however, whether the minor is *suitable* for DEJ is left to the court's discretion].)

and remand the matter for further proceedings under section 790 et seq. Moreover, given this outcome, we need not address minor's remaining arguments with respect to the DEJ, including those related to the effectiveness of his assistance from counsel, that are raised in his direct appeal or related petition for habeas corpus.

**II. The Sustained Allegation of Conspiracy to Commit Attempted Burglary Must Be Reversed.**

Minor and the People further agree that the juvenile court erred in sustaining the allegation that minor conspired to commit attempted burglary because "conspiring to merely attempt to commit a crime, rather than to commit it, is itself not a crime." We again agree.

It is established law that the crime of conspiracy does not lie for the commission of attempted crimes. "[A] conspiracy consists of two or more persons conspiring to commit any crime. A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such an agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416 [fn. omitted].) And, as explained in *People v. Iniguez* (2002) 96 Cal.App.4th 75, a case involving the crimes of conspiracy and attempted murder: "[T]he targeted crime of the conspiracy, attempted murder, requires a specific intent to actually commit the murder, while the agreement underlying the conspiracy pleaded to contemplated no more than an ineffectual act. No one can simultaneously intend to do and not do the same act, here the actual commission of a murder. This inconsistency in required mental states makes the purported conspiracy to commit attempted murder a legal falsehood." (*Id*. at p. 77.)

We conclude the reasoning in *People v. Iniguez* applies squarely in this case, given that the alleged offense of attempted burglary, like attempted murder, is a specific intent crime requiring intent to commit burglary and a direct but ineffectual act in furtherance of the burglary. (Pen. Code, §§ 21a, 664, 459.) Simply put, minor could not have conspired to commit only an ineffectual act toward the commission of the intended burglary. (*People v. Iniguez, supra,* 96 Cal.App.4th at pp. 77, 79.)

6

Accordingly, we agree with the parties the juvenile court erred in sustaining the allegation that minor committed the nonexistent offense of conspiracy to commit attempted burglary. The sustained allegation should therefore be reversed.

### III. The Juvenile Court Erred by Failing to Indicate the Maximum Term of Minor's Confinement.

Finally, minor contends, and the People agree, the juvenile court erred by failing to calculate and specify in the dispositional order or on the record minor's maximum term of confinement at the San Mateo County Juvenile Rehabilitation Facilities Camp Glenwood Program, the juvenile facility in which he was placed. The parties are again correct.

The applicable code provisions are quite clear. "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, subd. (d).) See also *In re Julian R.* (2009) 47 Ca1.4th 487, 497 [the maximum term may be stated by the court on the record or written in the confinement order].) "[P]hysical confinement" includes "placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority." (§ 726, subd. (d).)

Here, the juvenile court removed minor from his parents' custody and placed him in the San Mateo County Juvenile Rehabilitation Facilities Camp Glenwood Program, a juvenile camp within the meaning of section 726, subdivision (d). However, in doing so, the juvenile court failed to discharge its mandatory duty under section 726, subdivision (d), to indicate, in the order or on the record, the maximum term of minor's confinement. (§ 726, subd. (d); *In re Julian R., supra,* 47 Cal.4th at p. 491.) Accordingly, we agree with the parties that if, on remand, the juvenile court should

7

determine minor's placement in the camp, in lieu of DEJ, is the proper disposition in this matter, it must then determine and specify the maximum term of his confinement.

## DISPOSITION

The jurisdictional order is reversed as well as the underlying findings; the dispositional order is reversed, and the matter is remanded to the juvenile court for further proceedings consistent with the opinions reached herein.

_____

Jenkins, J.

We concur:

_____

Pollak, Acting P. J.

_____

Siggins, J.